# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

UNITED STATES OF AMERICA

v.

TALIA GUZMAN

**CRIMINAL COMPLAINT**
(Electronically Submitted)

CASE NUMBER: MJ-25-04105-001-PCT-CDB

I, the undersigned complainant, state under oath that the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about October 13, 2024, in Coconino County, in the District of Arizona, within the confines of the Havasupai Indian Reservation, Indian Country, the defendant, **TALIA GUZMAN**, an Indian, did knowingly, intentionally, and recklessly assault the victim, O.G., resulting in serious bodily injury, in violation of Title 18, United States Code, Sections 113(a)(6) and 1153.

## COUNT 2

On or about October 13, 2024, in Coconino County, in the District of Arizona, within the confines of the Havasupai Indian Reservation, Indian Country, the defendant, **TALIA GUZMAN**, did intentionally and knowingly assault the victim, O.G., with a dangerous weapon, that is, a sharp metallic object, with the intent to do bodily harm, in violation of Title 18, United States Code, Sections 113(a)(3) and 1153.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

REVIEWED BY: _AUSA Amanda Tesarek_  /AT/

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.**

Cameron Mizell, Special Agent, FBI
Complainant's Name and Title

_Cameron Mizell_  3/21/25
Complainant's Signature   Date

X  Sworn by Telephone

- 1 -

**CC: USM & PTS**

March 21, 2025                          Flagstaff, Arizona
Date/Time                                              City and State

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office                         Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## STATEMENT OF PROBABLE CAUSE

I, FBI Special Agent Cameron B. Mizell, being duly sworn, depose and state the following:

### Background and Experience of Affiant

1. I am employed as a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed since March 2011. As an FBI Special Agent, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18 of the United States Code. My duties include the investigation of violent crimes occurring within Indian Country as well as similar crimes within the District of Arizona.

2. I am currently assigned to the FBI Phoenix Division, Lake Havasu City Resident Agency, and charged with the investigation of crimes occurring on (among other places) the Havasupai Indian Reservation within the District of Arizona. Based on my training, education, and experience, I know that the Havasupai Tribe is a federally recognized tribe.

3. The information contained in this affidavit is based upon my personal knowledge, training, and experience, as well as information provided to me by other law enforcement officers and/or witnesses including those listed herein. Because

this affidavit is made to establish probable cause, I have not listed every fact known regarding this investigation.

## Introduction

4. This case involves a physical assault that occurred on O.G. in the village of Supai, Arizona, which is on the Havasupai Indian Reservation in the District of Arizona. The assault occurred on October 13, 2024, and was committed by Talia Guzman ("Guzman"), an Indian female.

5. Following the assault, O.G. reported to law enforcement that he had been stabbed by a female, later identified by law enforcement and others as Guzman. O.G. had a severed earlobe and lacerations on his shoulder, back, and chest. O.G. was treated for his injuries at Indian Health Services in Supai, Arizona and received eight stitches to his ear and six stiches to the side of his face.

6. Based on my training and experience and the facts set forth in this affidavit there is probable cause to believe that the assault was committed in violation of 18 U.S.C. §§ 113(a)(3), 113(a)(6) and 1153, Assault Resulting in Serious Bodily Injury and Assault with a Dangerous Weapon, Offenses Committed Within Indian Country.

## Investigation/Probable Cause

7. On October 13, 2024, United States Department of Interior, Bureau of Indian Affairs ("BIA") Officers Winters Burdette and Charles Etheredge ("Officers Burdette and Etheredge") responded to a dispatch report of a possible stabbing that

occurred at the home of J.W. within the exterior boundaries of the Havasupai Indian Reservation. Upon response, Officers Burdette and Etheredge found O.G. in the bathroom of the residence with blood on the right side of his face near his ear and blood on the palms of his hands. O.G. had lacerations on his shoulder, back, and chest. Officers Burdette and Etheredge observed blood in several areas of the home and signs of a physical altercation outside the home.

8. On October 16, 2024, BIA Officer Winters Burdette ("Officer Burdette") provided the incident reports, victim and location photographs, and written statements by the victims, including specifics about the assault. In summary, and based upon my review of those reports, the following occurred:

a. On October 13, 2024, Officer Burdette was off duty, but within the exterior boundaries of the Havasupai Indian Reservation, when he received a call from dispatch informing Officer Burdette that Mo.W. had requested law enforcement response to J.W.'s home. Dispatch reported to Officer Burdette that Guzman had been drinking and had stabbed someone at the residence.

b. Officer Burdette proceeded to J.W.'s home and was accompanied by BIA Officer Charles Etheredge ("Officer Etheredge"), who was also off duty at the time and had received the same dispatch report. Upon approach, Officer Burdette observed a maroon jacket on the ground outside of the residence.

c. Officers Burdette and Etheredge entered the residence and went toward the bathroom in the back of the home. They found O.G. in the bathroom

with a laceration on his right cheek near his ear. Officer Burdette observed that O.G.'s right ear lobe was also severed. O.G. advised Officer Burdette that he was not a member of the tribe. O.G. is Hispanic, and is from Tucson, Arizona.

      **d.**      Officer Burdette escorted O.G. to Indian Health Services in Supai, Arizona. While at the clinic, Officer Burdette took photographs of O.G.'s injuries. O.G. told Officer Burdette that he had been in an altercation with a woman, later identified as Guzman, and that the altercation took place outside in the yard of J.W.'s home. O.G. did not know the name of the female assailant. After O.G. received medical treatment, Officer Burdette escorted O.G. back to J.W.'s home.

      **e.**      Officer Etheredge recovered the maroon jacket that was seen on the ground previously in the front yard of J.W.'s home by Officers Burdette and Etheredge during the initial response. The jacket had distinct features and closely resembled a jacket Officer Burdette had seen Guzman wear on multiple prior occasions. The jacket was a maroon-colored, bomber style jacket, with the words "LOVE & SPORTS" on one of the sleeves. Officers Burdette and Etheredge attempted to locate Guzman that evening but were unsuccessful.

      **f.**      On October 14, 2024, at approximately 8:30 a.m., the morning following the altercation, Officer Burdette encountered John Doe, Guzman's juvenile brother, exiting the yard of J.W.'s home. Officer Burdette asked John Doe if he had seen anything that had occurred the night before at J.W.'s home. John Doe

told Officer Burdette that his sister, Guzman, had stabbed O.G. and that John Doe's and Guzman's sister, Ma.W., had also witnessed the altercation.

      g.    Officer Burdette located Ma.W. later the same day. Ma.W. told Officer Burdette that she received a text message from Guzman the evening before informing Ma.W. that O.G. was trying to fight their younger brother, John Doe Ma.W. went to J.W.'s home and found Guzman and O.G. arguing outside of the home. Guzman was also arguing with O.G.'s girlfriend, Mo.W. Ma.W. told Officer Burdette that Guzman had attacked Mo.W. and was punching Mo.W. According to Ma.W., O.G. tried to push Guzman off Mo.W. and Guzman attacked O.G. Ma.W. had not realized that Guzman had a knife until she saw O.G. bleeding. Ma.W. pulled Guzman off O.G. and Guzman took off running.

      h.    Officers Burdette and Etheredge then located and spoke with Mo.W. Mo.W. had bruising around her left eye when the officers talked with her. Mo.W. told the officers that she had been drinking the night of the altercation with Guzman. She was with O.G. and they were having an early celebration of O.G.'s birthday. Mo.W. identified the woman who attacked both her and O.G. as Talia Guzman. Guzman had come to the house and knocked on the door of J.W.'s home. Mo.W. thought it was someone else who also lived at the home. Instead, it was Guzman at the door. She demanded that Mo.W. and O.G. leave because she said they did not belong at the home.

         i.     Guzman tried to enter the home, but Mo.W. would not let her because Guzman did not have permission from anyone to be there. Guzman then punched Mo.W. in the face, and Mo.W. blacked out. Mo.W. later observed a laceration on her chest that she assumed was a stab wound as Mo.W. had no other explanation for the wound.

         j.     Officers Burdette and Etheredge also spoke with O.G., who stated that he saw a woman, later identified by other witnesses as Guzman, on top of Mo.W. and that he intervened to get Guzman off Mo.W. O.G. had no recollection of having been stabbed by Guzman until O.G. noticed that he was bleeding. It was then that O.G. observed what appeared to be a kitchen knife with a silver blade in Guzman's hand. Guzman had not been to the home while O.G. and Mo.W. had been staying there and Guzman had no reason to be there.

9.     On October 17, 2024, Guzman was located and arrested tribally by BIA Officers for the assault. While at the holding facility in Supai, Arizona, and prior to being arraigned on her tribal charges, your affiant interviewed Guzman telephonically. Officer Burdette facilitated the interview and was present with Guzman for the interview. Guzman was read her Miranda warnings before the interview, and she agreed to speak with your affiant. In summary, Guzman provided the following information:

  a. Guzman admitted she had been drinking during the evening hours on the Havasupai Indian Reservation on October 13, 2024. It was dark out and Guzman went to go visit a friend in the village of Supai.

  b. While walking she received a text message from her little brother, John Doe. John Doe was at J.W.'s home with O.G. and Mo.W. He told Guzman that people were acting crazy at the home.

  c. Guzman walked toward J.W.'s home and, when she was near the home, she heard yelling and screaming coming from inside the home.

  d. According to Guzman, she ran to the front door and started pounding on the door. A man came out, later identified as O.G. Guzman had never met O.G. before but knew his girlfriend, Mo.W., who was there at the home. Guzman told O.G. that she was going to use the bathroom and, according to Guzman, O.G. said something like, "Who the fuck are you? I'm from Tucson. Fuck Supai." It seemed to Guzman that O.G. wanted to start something because he was talking trash about Supai.

  e. Guzman went inside to use the bathroom. When Guzman came out of the bathroom, Mo.W. got in Guzman's face and tried to keep Guzman from getting to the front door to leave. Guzman called Ma.W. on Facebook Messenger to tell Ma.W. about what was going on and to ask Ma.W. to come to the house to help.

  f. Guzman made it to the front door and tried to open the door, but the door was stuck. By the time she reached the door and was trying to leave, Ma.W.

and her boyfriend had arrived outside. According to Guzman, Ma.W.'s boyfriend told Guzman to stand back and kicked the door open.

  g. It seemed to Guzman that O.G. thought a larger fight was about to ensue once Ma.W. and her boyfriend arrived because he started "coming at" Guzman. Guzman stated that is when she grabbed a nearby screwdriver and "poked" O.G. with it. Guzman also claimed that O.G. hit his girlfriend, Mo.W., and Guzman threw Mo.W. on the ground to get her away from O.G.

  h. At the conclusion of the interview, Guzman stated that the incident was O.G.'s fault for coming down to Supai and saying, "Fuck Supai." Guzman stated that O.G. brought the trouble on himself and, "[…] got fucked up." Before the interview concluded, Guzman was asked if she was wearing a maroon jacket during the time the incident occurred that matched the description of the one Officer Burdette recovered on the ground in front of J.W.'s home, and Guzman confirmed that she was.

9. On November 13, 2024, your affiant interviewed Guzman's juvenile brother, John Doe. In summary, John Doe provided the following information:

  a. John Doe was staying at J.W.'s house along with O.G. and Mo.W. the day Guzman had an altercation with O.G. and Mo.W.

  b. Guzman sent John Doe a text message asking if she could drop by to use the restroom at the home. John Doe told Guzman that she could.

c.  Guzman came to the door of J.W.'s home and was drunk. A verbal altercation began almost immediately between Guzman, O.G., and Mo.W. John Doe had a difficult time understanding everything that was being said because Guzman, O.G., and Mo.W. were all under the influence of some substance.

d.  Guzman came into the home to use the bathroom. Ma.W. and her boyfriend came over to the home and were outside. Guzman, O.G., and Mo.W. all ended up outside in front of the home. John Doe observed Guzman punch Mo.W. and Mo.W. went down to the ground.

e.  Guzman went down to the ground with Mo.W. and O.G. came over to help Mo.W. get up and away from Guzman. It looked like Guzman was punching O.G. repeatedly, but when O.G. stepped into the light, John Doe could see blood and a cut on O.G. John Doe never saw a knife or other weapon. John Doe also never saw O.G. touch Guzman. After the assault, Guzman ran away, and John Doe left with Ma.W. and her boyfriend.

10. On November 1, 2024, your affiant interviewed O.G. and Mo.W. In summary, O.G. and Mo.W. provided the following information in addition to what was provided previously to BIA Officers Burdette and Etheredge:

a.  Guzman was pounding on the door of J.W.'s home at night on October 13, 2024. When O.G. and Mo.W. opened the door, Guzman demanded that O.G. and Mo.W. leave because they had no right to be at the home.

b.  Mo.W. is native and from Supai and O.G. is from Tucson. They

lived together in Tucson until O.G. lost his job in Tucson. They moved to Supai for O.G. to work on the trails that were washed out during floods from a storm.

   c. O.G. and Mo.W. were given permission by M.L. to live at J.W.'s home while in Supai. M.L. is the one who has rights to the home.

   d. O.G. and Mo.W. argued with Guzman about having the right to stay at the home and then Guzman unexpectedly punched Mo.W. Mo.W. blacked out and O.G. stepped in to help Mo.W. That was when Guzman stabbed O.G.

   e. O.G. was 100 percent sure he saw a knife with a silver blade in Guzman's hand. The knife was approximately six inches in length. It appeared to be a sheath knife rather than a folding variety. O.G. did not see the handle of the knife.

   11. Medical records were obtained from Indian Health Services for the injuries incurred by O.G. The records documented eight stitches to repair O.G.'s ear and six stitches to repair a laceration on O.G.'s face.

## Conclusion

   12. Based upon the information set forth above, I submit that there is probable cause to believe that Guzman violated federal law by assaulting O.G., in violation of 18 U.S.C. §§ 113(a)(6), (a)(3), and 1153.

   **Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: March 21 2025    _Cameron Mizell_
                   Cameron Mizell, Special Agent, FBI

X Sworn by Telephone

Date/Time: March 21, 2025

_____
Camille D. Bibles
United States Magistrate Judge